UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE BAKER; ANGELA CORBETT; MICHELLE O'LEARY; and DANIEL SCHUTTIG, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC., <br><br> Defendants. | Case No.  1:16-cv-220 (LEK/DJS) <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs, by and through their attorneys, as and for their complaint against Defendants, allege as follows:

## INTRODUCTION

1.     Residents of Hoosick Falls, New York receive their drinking water from groundwater.  Although unknown to them, for years they have been drinking water laced with a dangerous chemical called perfluorooctanoic acid, commonly referred to as PFOA.  When consumed, PFOA can cause numerous and serious health issues.  When PFOA is in the drinking water, it results in devaluation of property.

2.     The State of New York has identified Saint-Gobain Performance Plastics Corp. (Saint-Gobain) and Allied Signal Inc., now doing business as Honeywell International Inc. (Allied-Signal), as two of the parties, if not the only parties, potentially responsible for the contamination of the groundwater in Hoosick Falls.  Collectively, Saint-Gobain and Allied-Signal are referred to throughout this pleading as "Defendants."

3.     Defendants, in whole or in part, contaminated the aquifer beneath Hoosick Falls with PFOA.

4.     On January 27, 2016, Governor Cuomo directed New York state agencies to use Superfund money to address PFOA in the Hoosick Falls' water system and in private wells.

5.     The presence of PFOA in the municipal water supply and the local aquifer, coupled with the State's labeling the town as a Superfund site, has adversely impacted property values in the Village.

6.     The PFOA contamination has also adversely impacted individuals' ability to use and enjoy their home, impacted businesses and presented other injuries that require compensation, as set forth in more detail below.

## PARTIES

7.     Plaintiff Michele Baker is a citizen and resident of Hoosick Falls, New York, with a mailing zip code of 12090.  Ms. Baker is a homeowner who obtains her water from a private well.  In late January 2016, Ms. Baker commenced refinancing her mortgage with a bank in Hoosick Falls.  Approximately one week after she initiated the process, a bank representative informed Ms. Baker that the bank was no longer providing financing to residents of Hoosick Falls.  Upon information and belief, Ms. Baker's residential property has lost value since PFOA contamination in Hoosick Falls was disclosed.

8.     Plaintiff Angela Corbett is a citizen and resident of Hoosick Falls, New York, with a mailing zip code of 12090.  Ms. Corbett is a homeowner who obtains her water from a private well.  Although Ms. Corbett would like to move to a smaller home after her son graduates from high school soon, she fears that she will be unable to sell in light of the recently

announced PFOA contamination.  Indeed, upon information and belief, Ms. Corbett's residential property has lost value since PFOA contamination in Hoosick Falls was disclosed.

9.     Plaintiff Michelle O'Leary is a citizen and resident of Hoosick Falls, New York, with a mailing zip code of 12090.  Ms. O'Leary is a homeowner who obtains her water from the public municipal water system that the Village of Hoosick Falls operates.  In September 2015, Ms. O'Leary relocated her family to Hoosick Falls.  At that time, she was unaware that the municipal water was contaminated with elevated levels of PFOA.  Upon information and belief, Ms. O'Leary's residential property has lost value since PFOA contamination in Hoosick Falls was disclosed.  Ms. O'Leary has two children; she fears for their safety and the future of their health.  Shortly after she learned of the PFOA contamination in the Village, Ms. O'Leary started a grassroots volunteer organization to deliver bottled water to the elderly and infirm residents of Hoosick Falls.  Ms. O'Leary's water delivery efforts continue to this day, with no assistance from either the State or Defendants.

10.     Plaintiff Daniel Schuttig is a citizen and resident of Hoosick Falls, New York, with a mailing zip code of 12090.  Mr. Schuttig is a homeowner who obtains his water from the public municipal water system that the Village of Hoosick Falls operates.  Upon information and belief, Mr. Schuttig's residential property has lost value since PFOA contamination in Hoosick Falls was disclosed.

11.     Collectively, Plaintiffs Michele Baker, Angela Corbett, Michelle O'Leary, and Daniel Schuttig are referred to as "Plaintiffs."

12.     Defendant Saint-Gobain Performance Plastics Corporation is a foreign company with its principal executive office located at 750 East Swedesford Road, Valley Forge, Pennsylvania.

13.   Saint-Gobain is a Paris-based multinational corporation with more than 350 years of engineered materials expertise.   Saint-Gobain is one of the top 100 largest industrial companies in the world with € 43.2 billion in sales and 193,000 employees in 64 countries. Saint-Gobain employs approximately 1,200 people in New York.

14.   Saint-Gobain is the world's leading producer of engineered, high-performance polymer products, serving virtually every major industry across the globe. Saint-Gobain businesses support these key industries in bringing advanced technology polymer products and using them in the most demanding applications.

15.   Defendant Honeywell International (Honeywell), f/k/a Allied-Signal Inc., is a foreign corporation with its principle executive office located at 115 Tabor Road, Morris Plains, New Jersey.

16.   Honeywell is a Fortune 100 company with a global workforce of approximately 130,000. It serves a variety of industries, including the specialty chemicals industry.

17.   In 1999, Allied-Signal Inc. acquired Honeywell.  The combined company adopted Honeywell's name, however, because of superior name recognition.

18.   Allied-Signal was an aerospace, automotive, and engineering company that was created through the 1985 merger of Allied Corp. and Signal Companies.  Together, these companies had operated in the United States since at least the early 1920s.  Prior to the merger, a significant portion of Allied Corp.'s business was concerned with the chemical industry.

19.   Defendants, at various times relevant herein, and as described more fully below, operated a manufacturing facility at or around 14 McCaffrey Street, Hoosick Falls, New York.

## JURISDICTION AND VENUE

20.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff classes are citizens of states different from at least some of Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Defendant Saint-Gobain conducts substantial business in this District, has caused harm to Class Members residing in this District, and Plaintiffs  reside in this District.

<u>GENERAL FACTUAL ALLEGATIONS</u>

**Background Regarding PFOA**

22.     PFOA is a man-made chemical not found in nature.

23.     Minnesota Mining and Manufacturing Company (3M) is the original manufacturer of PFOA.

24.     A number of other companies have manufactured PFOA within the United States. Those companies include Arkema, Asahi, BASF Corp., Clariant, Daikin, DuPont and Solvay Solexis.

25.     PFOA is a perfluoralkyl carboxylate that is produced synthetically as a salt.

26.     Companies utilized PFOA for a number of uses; indeed, it was a key component in the manufacturing of Teflon.

27.     Companies also used PFOA to make fabrics water and stain resistant.

28.     For example, PFOA was used in the production of Gore-Tex.

29.     PFOA has been identified as an emerging contaminant of concern.

5

30.     There are a number of health risks associated with chronic exposure to PFOA, and these risks are present even when PFOA is ingested at, seemingly, very low levels (less than 1.0 parts per billion (ppb)).

31.     PFOA has the potential to be more of a health concern because it can stay in the environment and in the human body for long periods of time.

32.     Toxicology studies show that PFOA is readily absorbed after oral exposure and accumulates primarily in the serum, kidney and liver.  PFOA has a half-life in the human body of 2 to 9 years.

33.     Studies in lab animals have found exposure to PFOA increases the risk of certain tumors of the liver, testicles, mammary glands, and pancreas in these animals.

34.     Studies in humans have found that people with workplace exposure to PFOA have higher risks of bladder and kidney cancer.

35.     Exposure over 0.5 ppb of PFOA is associated with increased risk of testicular cancer, kidney cancer, thyroid cancer, high cholesterol, ulcerative colitis, and pregnancy-induced hypertension.

36.     These injuries, however, can arise months or years after exposure to PFOA.

37.     At all relevant times, PFOA was an unregulated contaminant within the State of New York.

38.     New Jersey has established a preliminary health-based guidance value of 0.04 ppb (40 parts per trillion (ppt)); Minnesota has established a chronic health risk level of 0.3 ppb.

39.     In 2009, the United States Environmental Protection Agency (EPA) issued a provisional health advisory for PFOA at 0.40 ppb.  The provisional health advisory states that the

discovery of PFOA in water above the advisory level should result in the discontinued use of the water for drinking or cooking.

**PFOA Use in the McCaffrey Street Facility**

40.     The New York State Department of Health (DOH) has identified a small factory at 14 McCaffrey Street in Hoosick Falls as a probable source for the presence of PFOA in the municipal water supply and local aquifer.

41.     The facility on McCaffrey Street began operation in or about 1955, and Dodge Fiber owned and operated the factory at that time.

42.     Dodge Fiber sold the facility to Oak Industries in 1967, which in turn sold the facility to Allied-Signal in 1986.

43.     Allied-Signal sold the facility to Furon Company (Furon) in 1997, and, most recently, Saint-Gobain purchased the facility in or around 1999. Saint-Gobain remains the owner and operator of the McCaffrey plant.

44.     Upon information and belief, throughout the Oak Industries, Allied-Signal and Furon ownership of the McCaffrey facility, each company manufactured stain and water resistant fabric at the factory.

45.     Upon information and belief, Saint-Gobain continued to manufacture water and stain resistant fabric at the McCaffrey facility from its purchase of the factory until approximately 2004.

46.     Throughout this period, upon information and belief, each company utilized PFOA in the manufacturing of stain resistant fabric.

47.     In manufacturing this fabric, each company coated the fabric with a liquid solution containing PFOA (the "PFOA Solution") in order to make the fabric resistant to stain.

48.     Saint-Gobain, Furon and Allied-Signal utilized trays for the application of the PFOA Solution to the fabric.  Employees added the solution to the trays during production runs and recovered most of the solution at the end of the run each shift.

49.     Defendants' employees, however, at the direction of corporate officers, washed out and discharged the remaining PFOA Solution from the trays into drains on a daily basis during each shift.  Those floor drains resulted in the discharge of PFOA into the soil and, in turn, into the aquifer.

50.     On average, Saint-Gobain ran three shifts, five days a week at the McCaffrey facility.

51.     Upon information and belief, Saint-Gobain halted the use of PFOA at the McCaffrey plant around 2004.

52.     Upon information and belief, throughout the Oak Industries, Allied-Signal and Furon ownership of the McCaffrey facility, each company also used PFOA in a solid form as a part of a separate manufacturing process.

53.     Allied-Signal also made pressure-sensitive tapes, Teflon-coated fabrics, and Teflon sheet, tape and laminates while it owned the McCaffrey plant.

54.     Saint-Gobain also utilized PFOA in other processes at the McCaffrey facility between, upon information and belief, 1999 and approximately 2004.

55.     Generally, Saint-Gobain's 190-employee Hoosick Falls operation produces PTFE (polytetrafluoroethylene) film, adhesive tapes and silicone rubber for aeronautical, automotive, food processing and energy applications.

56.     Upon information and belief, Oak Industries, Allied-Signal, Furon and Saint-Gobain utilized six large, approximately three-story ovens as a part of their manufacturing

process.  PFOA was used as part of the manufacturing process in advance of the use of the ovens and, accordingly, PFOA was baked in the ovens on a daily basis.

57.     Upon information and belief, the use of the ovens produced a sticky residue that would adhere to the internal tubing or "stacks" within the oven, and PFOA comprised a part of that residue.

58.     Upon information and belief, each company established a rotation by which each oven and its stacks were cleaned once every six weeks, with a different oven cleaned every Monday.

59.     Defendants' employees removed the residue in the stacks by washing the stacks in a large sink that measured approximately 3 feet by 3 feet by 20 feet in size.  At the end of each cleaning, the waste water from the cleaning was discharged down a drain and may have been released into a septic system or catch basin near the McCaffrey plant.  Those floor drains and other discharge points resulted in the discharge of PFOA into the soil and, in turn, into the aquifer.

60.     Upon information and belief, defendants discharged PFOA into the environment through other means that will be revealed through the discovery process.

**Public Awareness and Disclosure of Contamination**

61.     The Village of Hoosick Falls has a population of approximately 3,501 individuals.

62.      The Village of Hoosick Falls operates and maintains the municipal water system.

63.     The Village's municipal water system has approximately 1,300 service connections.  The Village estimates that its system provides water to nearly 95 percent of the Village's residents.

64.     The Village's municipal water system produced 147,227, 010 gallons of water in 2014.

65.     In or around 2007, Hoosick Falls completed the construction of a new production well to supply municipal water to many of the residents of Hoosick Falls.

66.     The production well lies approximately 500 yards away from the McCaffrey facility.

67.     Upon information and belief, prior to late 2014, the Hoosick Falls Water Department had not tested for the presence of PFOA within the municipal water.

68.     In June 2015, the Hoosick Falls Water Department conducted tests on the effluent from its production well(s) in order to discern whether PFOA existed within the water supply.

69.     Shortly thereafter, the Village received the results from its production well(s) tests.

70.     Those tests confirmed the presence of PFOA within the municipal water system.

71.     Testing of municipal water produced detections of 612 parts per trillion (ppt) (0.612 ppb), 618 ppt, 620 ppt, 151 ppt and 662 ppt for PFOA.

72.     Absent actual testing, it is essentially impossible to determine whether PFOA is in municipal water or private well water.

73.     Similarly, upon information and belief, the Village oversaw the testing of certain private wells within the Village in the summer of 2015, and received results that included detections of 194 ppt, 246 ppt and 252 ppt.

74.     The Village's response to these test results was to reassure individuals within the community that the water was safe to drink.

75.     On November 25, 2015, the EPA contacted the Village and recommended the use of an alternative drinking water source and that residents not use the municipal water for drinking and cooking.

76.     In early December 2015, the DOH released a fact sheet for the Village.  That fact sheet, in part, stated that "Health effects are not expected to occur from normal use of the water."

77.     Village officials further minimized the potential risk of PFOA in the municipal water.

78.     The EPA repeated its recommendation to the Village on December 17, after, upon information and belief, hearing that Village officials were downplaying the first EPA notice and suggesting that whether or not an individual used municipal water was a matter of personal choice.

79.     Shortly after this date, Saint-Gobain began providing free bottled water to citizens of Hoosick Falls.  Near this time, Saint-Gobain also agreed to fund the installation of a granulated activated carbon filter system on the municipal water system to remove PFOA from drinking water.

80.     On January 14, 2016, Healthy Hoosick Water sponsored a public meeting with personnel from the EPA, the DOH and New York State Department of Environmental Conservation (DEC).

81.     At that meeting, New York officials announced that New York State had submitted a letter that day seeking the designation of Hoosick Falls as a federal Superfund site.

82.     EPA officials acknowledged in that meeting that a Superfund designation would adversely impact the property values of the Village.

83.     The Hoosick Falls school district announced on January 22, that testing identified PFOA within its well water at its transportation center.

84.     Governor Cuomo directed state agencies on January 27, 2016, to use State Superfund money to address PFOA in the Hoosick Falls' municipal water system.  The State Health Commissioner said that the Saint-Gobain plant would be deemed a state Superfund site and designated it a Class 2 site.

85.     That same day, the governor announced an emergency regulation to classify PFOA a hazardous substance.

86.     The following day, the EPA advised that home owners with private wells should use bottled water if testing has uncovered PFOA level in their water at 0.1 ppb or higher.  The EPA further recommended that home owners with private wells should use bottled water if no one has yet tested their well water.

87.     The DOH announced that it was testing private wells on a priority basis.  Upon information and belief, the Department has detected elevated levels of PFOA on Bovie Hill Road, Lester Lane, and several other areas within Hoosick Falls.  That testing is on-going, though testing has yet to occur on many of the private wells in and around the Village.

88.     At this time, one or more local banks indicated that they would not advance funds for a mortgage for the purchase or refinancing of a home in Hoosick Falls.  Indeed, the Treasurer of Trustco Bank, Kevin Timmons, publicly confirmed that the bank was not writing new mortgages for any home on the Village's municipal water supply.  Timmons indicated that lenders typically require that homes have access to potable water before financing is approved.

89.     Timmons further stated that financing would not be approved for homes on private wells until the water supply was tested for the presence of PFOAs.

90.     The concern regarding lost property value has prompted Governor Cuomo to dispatch representatives of the New York Department of Financial Services to begin regularly appearing in Hoosick Falls to answer residents' questions.  The president of the Hoosick Falls Credit Union observed that banks are within their right to suspend mortgage and refinancing applications where homes lack safe drinking water.  The president noted that there was not much the Department of Financial Services could do about this "other than listen."

91.     As a result of the presence of PFOA within the aquifer, the municipal water system and private wells, the property values within Hoosick Falls have experienced a significant decline.

92.     On or around February 1, 2016, New York Senator Chuck Schumer called on Defendant Saint-Gobain to disclose immediately the full extent of the pollution it caused. Senator Schumer stated, "Saint-Gobain did this.  They've got to first come clean as to what happened, where they put the stuff, and then work on a plan to quickly clean it up."

93.     The State of New York established a regular presence in Hoosick Falls beginning on February 1, 2016.  Under this approach, the State indicated that DOH personnel would be present in the Village three times a week to address concerns and to discuss how the State planned to move forward.

94.     The DEC wrote official letters to Saint-Gobain and Allied-Signal on February 11, 2016, and identified the two companies as parties potentially responsible for PFOA contamination at one or more properties in Hoosick Falls, including the Saint-Gobain McCaffrey Street Site, No. 442046.

95.     The DEC's letter to the two corporations constituted a demand that each enter into an enforceable Consent Order to characterize and investigate the extent of the contamination, to

13

provide interim remedial measures to protect public health and drinking water supplies, to analyze alternatives for providing clean and safe drinking water and, ultimately, to design and implement a comprehensive clean-up and remediation at the McCaffrey Street plant and any additional locations.

96.     The letter further advised each company that "responsible parties are liable for the reimbursement of funds expended by the State of New York in taking responsive actions at sites where hazardous substances and/or wastes have been released."

## CLASS ACTION ALLEGATIONS

97.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

98.     Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed subclasses pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and (b)(3).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

99.     Plaintiffs bring this class action on behalf of two subclasses, as set forth below:

**Municipal Water Property Damage Subclass**
All current owners of real property located in the Village of Hoosick Falls, New York and/or current owners of real property with a mailing zip code of 12090 or 12089, and who receive their drinking water from the municipal water supply.

**Private Well Water Property Damage Subclass**
All current owners of real property located in the Village of Hoosick Falls, New York and/or current owners of real property with a mailing zip code of 12090 or 12089, and who obtain their drinking water from a privately owned well.

14

100.    Excluded from the Municipal Water Property Damage Subclass ("Municipal Water Subclass") and the Private Water Property Damage Subclass ("Private Water Subclass") Class are: (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (b) the Judge to whom this case is assigned and the Judge's staff; (c) any class counsel or their immediate family members; and (d) any State or any of its agencies.

101.    Plaintiffs reserve the right to amend the Municipal Water Subclass and/or the Private Water Subclass definitions if discovery and further investigation reveals that either Subclass should be expanded, divided into additional subclasses or modified in any way.

102.    Collectively, the Municipal Water Subclass and the Private Water Subclass are referred to as "the Subclasses."

**Numerosity**

103.    Although the exact number of class members is uncertain and can be ascertained only through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to the Court.

104.    Further, class members are readily identifiable from publically available information regarding property ownership.

**Typicality**

105.    Plaintiffs' claims are typical of the claims of the Subclasses in that Plaintiffs, like all class members, are owners of real property that has experienced a diminution in value due to the actions of the Defendants.  The factual bases of Defendants' misconduct are common to all

class members and represent a common thread of misconduct resulting in injury to all members of the Subclasses.

## Adequate Representation

106.    Plaintiffs will fairly and adequately represent and protect the interests of the Subclasses.   Plaintiffs have retained counsel with substantial experience litigating both environmental torts and class actions, including actions, like this one, representing putative subclasses whose property has been devalued by the actions of a polluter.

107.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Subclasses and have the financial resources to do so.   Neither Plaintiffs nor their counsel has interests adverse to either Subclass.

## Predominance of Common Questions

108.    Plaintiffs bring this action under Rule 23(b)(3) because there are numerous questions of law and fact common to Plaintiffs and the class members that predominate over any question affecting only individual class members.   The answers to these common questions will advance resolution of the litigation as to all class members.   These common legal and factual issues include:

a.    Whether Defendants owed a duty to Plaintiffs and members of the Subclasses to refrain from conduct reasonably likely to cause contamination of class members' drinking water;

b.    Whether Defendants knew or should have known that it was unreasonably dangerous to dispose of PFOA Solution into the environment;

c.     Whether Defendants knew or should have known that disposing of PFOA Solution in the manner alleged herein was reasonably likely to cause contamination of class members' drinking water;

d.     Whether Defendants breached a legal duty to Plaintiffs and the Subclasses by disposing of PFOA Solution in the manner described herein;

e.     Whether Defendants' breach of a legal duty caused class members' drinking water to become contaminated with PFOA;

f.     Whether it was foreseeable that Defendants' use of PFOA would cause class members' drinking water to become contaminated and/or unreasonably dangerous for normal and foreseeable human consumption or use;

g.     Whether the PFOA contamination described herein substantially interfered with Plaintiffs' and class members' use and enjoyment of their property;

h.     Whether the PFOA contamination described herein caused, and continues to cause, a continuous invasion of the property rights of Plaintiffs and the Subclasses;

i.     Whether Defendants caused the devaluation of Plaintiffs' and class members' property;  and

j.     Whether Defendants caused PFOA to enter, invade, intrude upon or injure the property rights of Plaintiffs and the Subclasses.

109.   The Private Water Subclass shares additional questions of law and fact that predominate over any question affecting only individual class members, including:

a.   Whether Defendants have a duty to provide testing of private wells located in the village of Hoosick Falls, New York and/or within mailing zip code 12090 or 12089; and

b.   Whether Defendants have a duty to remediate the wells belonging to and providing a water source for Private Water Subclass members.

## Superiority

110.   Plaintiffs and members of the Subclasses have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

111.   Absent a class action, most class members would likely find the cost of litigating their claims to be prohibitively high and, therefore, would have no effective remedy at law. Further, without class litigation, class members will continue to incur damages.

112.   Class treatment of common questions of law and fact will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## Rule 23(b)(2) Injunctive or Declaratory Relief

113.   In addition to the above, Plaintiffs bring this class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Subclasses, such that final injunctive relief or declaratory relief is appropriate with respect to each Subclass as a whole.  Such injunctive relief includes, but is not limited to, an injunction to require preventative measures to limit the damage to class members' homes and personal property, the cleanup and mitigation of harm to class members' homes and personal property to the extent possible, including remediation of the aquifer upon which Plaintiffs and class

members depend for their drinking water, and an order requiring Defendants to institute remedial measures sufficient to permanently prevent PFOAs from contaminating class members' drinking water and/or properties.

114.     Accordingly, Plaintiffs seek an injunction requiring Defendants to test class members' private wells for the presence of PFOA, and to install permanent filtration systems on all class members' private wells in which PFOA is present.

115.     Finally, Plaintiffs and the Class seek a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs and members of the Subclasses.

### Rule 23(c)(4) Certification of Particular Issues

116.     In the alternative to certification under Rule 23(b)(2) or 23(b)(3), Plaintiffs and the Subclasses seek to maintain a class action with respect to particular issues under Rule 23(c)(4).

117.     Specifically, the liability of each Defendant, or the Defendants jointly, is suitable for issue certification under Rule 23(c)(4).

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### Negligence

118.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

119.     This Claim is brought under New York law.

120.     Defendants knew or should have known that use of PFOA Solution and/or the discharge of PFOA was potentially hazardous to human health and the environment and required

19

Defendants to take adequate safety precautions to ensure that PFOA was not released into the surrounding environment.

121.    Defendants further knew or should have known that it was unsafe and/or unreasonably dangerous to wash out and/or discharge filters or trays containing PFOA Solution onto the ground within floor drains in, and in close proximity to, the McCaffrey facility.

122.    Defendants further knew or should have known that it was unsafe and/or unreasonably dangerous to wash out and/or discharge into the environment the residue from the manufacturing ovens and their stacks.

123.    Defendants had a duty to take all reasonable measures to ensure that PFOA Solution would be effectively contained and not discharged into the surrounding environment.

124.    Defendants further had a duty to ensure that the manufacturing processes they chose to employ did not unreasonably endanger the drinking water relied upon by residents of Hoosick Falls and the surrounding area.

125.    Defendants breached the above-stated duties by unreasonably disposing of PFOA Solution in a manner that guaranteed they would enter the environment, including the groundwater.

126.    As a result of Defendants' breach, the drinking water in and around Hoosick Falls, New York has become contaminated with unsafe levels of PFOA. Indeed, Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have contaminated both the municipal drinking water and drinking water of private wells in Hoosick Falls and the surrounding area.

127.    These unsafe levels of PFOA have deprived Plaintiffs and the Subclasses  of potable water and reduced class members' property values.

128.    As a direct and proximate result of Defendants' actions and omissions described herein, Plaintiffs and the Subclasses have suffered and continue to suffer damages, including the loss of property value; monetary damages associated with the investigation, treatment, remediation, and monitoring of drinking water and the contamination of their respective property; as well as compensatory and consequential damages set forth below.

## SECOND CLAIM FOR RELIEF

### Private Nuisance

129.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

130.    This Claim is brought under New York law.

131.    Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have contaminated both the municipal drinking water and drinking water of private wells in Hoosick Falls and the surrounding area.

132.    The contamination of class members' drinking water has interfered with the rights of Plaintiffs and the Subclasses to use and enjoy their property. Indeed, this interference is substantial in nature. It has caused and is causing Plaintiffs and the Subclasses to, *inter alia*, refrain from using water to drink, cook, or bathe, which has, in turn, caused significant inconvenience and expense.  Defendants' conduct has also substantially interfered with class members' ability to enjoy their property, to avail themselves of their property's value as an asset and/or source of collateral for financing, and to use their property in the manner that each class member so chooses.

133.    Defendants' negligent, reckless and/or intentional acts and omissions were unreasonable and constitute a continuous invasion of the property rights of Plaintiffs and the Subclasses.

134.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs and the Subclasses have incurred, and will continue to incur, costs and expenses related to the investigation, treatment, remediation, and monitoring of drinking water and the contamination of their respective properties, as well as the damages set forth below.

## THIRD CLAIM FOR RELIEF

### Trespass

135.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

136.    This Claim is brought under New York law.

137.    Plaintiffs and the Private Water Subclass members are owners of real property with the right of possession.

138.    Defendants negligently, recklessly, and/or intentionally failed to properly control, apply, use and/or dispose of PFOA Solution and/or other waste containing PFOA, such that Defendants proximately caused contaminants to enter, invade, intrude upon and injure the right of Plaintiffs and the Private Water Subclass to possess their property.

139.    Plaintiffs and the Private Water Subclass have not consented, and do not consent, to the contamination alleged herein.  Defendants knew or reasonably should have known that Plaintiffs and the Private Water Subclass would not consent to this trespass.

140.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, the drinking water of Plaintiffs and the Private Water Subclass has been contaminated

with PFOA, causing significant property damage, including actual, consequential, and nominal damages, as well as those set forth in more detail below.

## FOURTH CLAIM FOR RELIEF

### Strict Liability for Abnormally Dangerous Activity

141.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

142.    In the alternative to the First Claim for Relief, set forth above, Plaintiffs bring this Claim under New York law.

143.    Defendants' manufacturing processes and negligent, reckless, and/or intentional handling of PFOA Solution constituted an abnormally dangerous activity for which Defendants are strictly liable.

144.    Defendants' use and disposal of PFOA Solution or other waste containing PFOA, as described herein, was inappropriate to the place where it was carried out, especially given the McCaffrey Street facility's close proximity to sources of drinking water relied upon by residents of Hoosick Falls and Defendants' mishandling of the PFOA Solution.

145.    Furthermore, Defendants' use and disposal of PFOA, and reckless disregard for the consequences of those actions, carried a high degree of risk of harm to others and a likelihood that any such harm would be great.  Indeed, the result of Defendants' conduct is all too clear. The State of New York has, *inter alia*, declared the Village of Hoosick Falls a Superfund site and activated emergency funds to remediate the situation.

146.    As a result of Defendants' abnormally dangerous activities, Plaintiffs and the class members have suffered harm to their property and have been forced to mitigate damages as set forth herein, as well as below.

## DAMAGES SOUGHT BY THE CLASS

147.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

148.    Plaintiffs and the Subclasses have sustained and will continue to sustain damages to their property as a result of Defendants' actions.  As a result, Plaintiffs and the Subclasses seek monetary damages for each violation of the First through Fourth Claims for Relief.  In particular, Plaintiffs and the Subclasses seek (i) monetary damages reflecting the cost to remediate class members' property of the contamination caused by Defendants' conduct or, in the alternative, to compensate class members for the diminution in value of their property caused by Defendants' conduct; (ii) monetary damages to compensate class members for the loss of the use and enjoyment of their properties caused by Defendant's conduct; (iii) monetary damages for the diminution of the value of the plaintiffs' property, and (iv) monetary damages to compensate class members for the loss of quality of life caused by Defendants' conduct.

149.    Plaintiffs and the Subclasses also seek consequential damages sufficient to fund a medical monitoring program that is reasonably tailored to the exposure risks posed by PFOA.

150.    Further, because Defendants' acts were done maliciously, oppressively, deliberately, and in reckless disregard of Plaintiffs and the Subclasses, Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

151.    In addition to the above, Plaintiffs and the Subclasses seek injunctive relief including, but not limited to, implementation of a mandatory testing protocol requiring Defendants to expeditiously test the wells of all Private Well Subclass members for the presence of PFOA and to continue that testing until it is determined that the risk of PFOA contamination

in private wells has ended; to install permanent filtration devices on any private well testing positive for the presence of PFOA; to establish a medical testing protocol for Class Members to monitor their health and diagnose at an early stage any ailments associated with exposure, inhalation or ingestion of PFOA; and to take additional steps, to be proven at trial, that are determined necessary to remediate all class members' properties and/or residences to eliminate the presence of PFOA.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

A.      an order certifying the proposed Municipal Water Property Damage Subclass and the Private Water Property Damage Subclass, designating Plaintiffs as the named representatives of the respective Subclasses, and designating the undersigned as Class Counsel;

B.      a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs and members of the Subclasses;

C.      an order requiring Defendants (i) to implement a testing protocol to test the wells belonging to each member of the Private Water Property Damage Subclass; (ii) to install permanent filtration devices on any private well testing positive for the presence of PFOA; (iii) to establish a medical testing protocol for Plaintiffs and Subclass members to monitor their health and diagnose at an early stage any ailments associated with exposure, inhalation or ingestion of PFOA, and (iv) to take all necessary steps to remediate the property and/or residences of Plaintiffs and the Subclasses to eliminate the presence of PFOA;

D.      an award to Plaintiffs and Subclass members of compensatory, exemplary, and consequential damages, including interest, in an amount to be proven at trial;

E.      an award of attorneys' fees and costs, as permitted by law;

F.      an award of pre-judgment and post-judgment interest, as provided by law;

G.      leave to amend this Complaint to conform to the evidence produced at trial; and

H.      such other relief as may be appropriate under the circumstances and/or permitted by law or as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: February 24, 2016
       New York, New York

Respectfully submitted,

*/s/ Ellen Relkin*

Ellen Relkin (ER-9536)
*erelkin@weitzlux.com*
Robin L. Greenwald (*pro hac vice* pending)
*rgreenwald@weitzlux.com*
William Walsh
*wwalsh@weitzlux.com*
James J. Bilsborrow
*jbilsborrow@weitzlux.com*
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, New York 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461

*Attorneys for Plaintiffs and Proposed Class*